Law Offices Of
Donna R. Newman
Attorney at Law
20 Vesey Street, Suite 400
New York, New York 10007
Tel. 212-229-1516 Cell: 201-306-4369
Fax: 212-593-1844
donnanewmanlaw@aol.com

Admitted: N.Y. & N.J. Bar

July 7, 2025

**BY ELECTRONIC MAIL & ECF**
The Honorable Vernon S. Broderick
United States District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

SO ORDERED:

*[signature]*
HON. VERNON S. BRODERICK
UNITED STATES DISTRICT JUDGE
7/8/2025
The Government should respond by July 11, 2025.
Bail hearing is scheduled for July 17, 2025 at 11 AM.

*United States v. Megan Sterngast, 25cr 40*

Dear Judge Broderick:

    We write on behalf of Megan Sterngast to request a bail hearing and propose a combination of factors that will both ensure the safety of the community and Ms. Sterngast's presence in court. We recognize that the crime alleged, a drug conspiracy with "death resulting," carries a mandatory twenty-year mandatory minimum sentence and thus, there is a rebuttable presumption of detention. The proposed pretrial release bond rebuts the presumption. Bond under the conditions proposed should be ordered.

    As the Court is aware, in order to prevail on a request to detain Ms. Sterngast, the government must show by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f). In setting bail, the law requires that the Court impose the least restrictive conditions that will ensure Ms. Sterngast's return to court and the safety of the community. 18 U.S.C. § 3142(c)(B).

***Proposed Bond***

We propose release on the following bond with restrictive conditions:
1. A two hundred thousand dollars ($200,000.00) bond;
2. Cosigned by two financially responsible suretors-her father –David Sterngast **seventy-one** years and her brother David Sterngast, forty-four years
3. Cosigned by her mother, Hannah Sterngast for moral suasion,
4. In addition to this substantial financial bond, we propose that Ms. Sterngast be placed under strict pretrial conditions designed to mitigate any perceived risk. These measures would include location monitoring and home detention at her mother's residence, with exceptions

    only for court appearances, meetings with counsel, and approved treatment or educational activities;

5. Participation in out-patient drug and mental health treatment at a facility approved by Pretrial services;

6. Hannah Sterngast has agreed to be a third-party custodian and accompany her daughter to all drug and mental health treatment appointments;

7. Rather than seeking employment, Ms. Sterngast is to continue her education by completing the Rutgers University online Master of Science program in which she is already enrolled;

8. Further, travel will be restricted to the Southern District of New York, and any travel documents shall be surrendered and Ms. Sterngast will not make application for such documents.

### *Applicable Law*

When a defendant is charged with committing "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," or a crime of violence, the Bail Reform Act imposes a presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). "In a presumption case . . . , a defendant bears a limited burden of production— not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "[T]he government retains the ultimate burden of persuasion by clear and convincing evidence that [a] defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that a defendant presents a risk of flight." *Mercedes*, 254 F.3d at 436. If the Government successfully demonstrates that a defendant is either a danger to the community or a risk of flight, it must then prove by a preponderance of the evidence that there are no conditions or a combination of conditions which reasonably will ensure the presence of the defendant at trial and/or the safety of the community if he is released. *Id.*

To determine whether the Defendant has rebutted the presumptions of dangerousness and flight, the Court considers the four factors listed in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, such as his family ties, employment, community ties, and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual that the Defendant's release would present. *Mercedes*, 254 F.3d at 436.

In making this evaluation, an individualized assessment is appropriate. *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010); *United States v. Hir*, 517 F.3d 1081, 1091 n.8 (9th Cir. 2008) ("each case requires a fact-specific inquiry into the potential danger posed by the individual defendant"); *United States v. Patriarca,* 948 F.2d 789, 794 (1st Cir. 1991) (rejecting government's argument that because defendant is alleged member of the same organized crime family as the other defendants were detained, this defendant must be detained).

A comprehensive report published in 2022 by the University of Chicago Law School

found that:

> ]The] overwhelming evidence demonstrate[es] that pretrial jailing does not advance its stated purpose of ensuring appearance and community safety. **Although federal judges may believe that detaining more arrestees will ensure community safety, evidence shows that pretrial detention is instead criminogenic, harming individuals and imposing additional costs on society.** A series of studies has proven that even short-term detention increases the likelihood of reoffending by more than 25%.[1] These data cast significant doubt on the notion that pretrial detention curbs criminal activity and benefits society. Rather, as one United States District Court judge has observed, "Mass detention creates mass incarceration." (citing Judge James G. Carr, *Why Pretrial Release Really Matters*, 29 Fed. Sent G'Rep. 217, 220 (2017)). (emphases in original).[2]

Inherent in the Bail Reform Act is a policy to avoid unnecessary pretrial detention and thus, where there are conditions of bond that both ensure the safety of the community and defendant's presence in court , as is the case here,  bond should be granted. Further, the Court should consider the negative collateral consequences  Notably, "statistics show that pretrial supervision provides a safe and cost-effective alternative to pretrial detention." As an example, a recent study found that "less than one percent of the defendants released to supervision were revoked due to a felony re-arrest and fewer than one percent failed to appear in court as direct. Even Technical violations… were low at 12 percent."[3] The cost of pretrial supervision is substantially lower than the cost of pretrial detention.[4] Moreover, pretrial detention may have a significant impact on the outcome of the case. Research indicates that pretrial detention is itself associated with increased likelihood of a prison sentence and with increased sentence length.[5] On the other hand, pretrial release increases the likelihood of  not being sentenced to prison and is associated with a decrease in sentence length.[6]

### *Charges and Megan Sterngast's* A*lleged* P*articipation*

In determining whether to grant bail the Court is tasked with considering the strength of the evidence, among other factors. 18 USC §3142 (g)(2). The charges involve an alleged scheme

---

[1] Erica Zunkel & Alison Siegler, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction*, 18 Ohio ST. J. Crim. 283, 306 (2020) (quoting Christopher L. Lowenkamp et al., *The Hidden Costs of Pretrial Detention*, Arnold Found. 19 (2013), https://craftmediabucket.s3.amazonaws.com/uploads/PDFs/ LJAF_Report_hidden-costs_FNL.pdf [https://perma.cc/FE39-BR7E]).

[2] Alison Siegler, "Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis," Univ. Chicago Law School Fed. Crim. Justice Clinic, Oct. 2022 (available at: https://freedomdenied.law.uchicago.edu/report.

[3] Summary of the Report of the Judicial Conference Committee on Criminal Law, Agenda E-7, September 2012, Appendix at 3 ("CLC Report") (2017)

[4] *Guide to Judiciary Policy,* Vol 88, "alternatives to Detention and Conditions of Release" (Monograph 110) at § 150("by imposing conditions of release and alternative to detention, judicial officers are able to promote the responsible use of public funding to protect the rights of defendants and to reasonably assure the appearance of the defendant and the safety of the community as required").

[5] James C. Oleson, Christopher T. Lwenkamp, John Wooldredge, Marie VanNostrand, and Timothy P. Cadigan, *The Sentencing Consequences of Federal Pretrial Supervision,* 63 Crime 7 Delinquency, 313, 325 (study of 90,037 federal defendants during FY 2011).

[6] *Id*.

by the co-defendants: Jalen Teague, an alleged pimp, prostitutes Summer Caster and Chelia Sanders, who set up dates with customers and then drugged and robbed them. The drugging was allegedly accomplished with GHB, also known as the "date rape" drug. The death charged in this case occurred on August 16, 2023. According to the discovery, defendant Caster was the prostitute that met with the deceased on the date of his death. The N.Y. C. Medical Examiner's death certificate indicates that the cause of death was "Acute Intoxication By The Combined Effects of Cocaine, Ethanol [alcohol] and Gamma-Hydroxybutyrate [GHB]." While that determination is not dispositive and will be challenged, by Ms. Sterngast at trial, importantly, for this motion, the discovery fails to reveal Ms. Sterngast's direct involvement in the distribution of the GHB that may have contributed to the victim's demise.

### Ms. Sterngast Presents A Good Candidate For Pretrial Release

Ms. Sterngast is forty-one years old. She received her Bachor of Science from Michigan State University and requires just **two** additional **courses** to obtain her Master of Science in Public Administration.

Since August, 2025, she was incarcerated in New York State prison Bedford Hills, serving her sentence of 1 ½ to 3 years for Grand Larceny. She received no tickets during the entire term of her incarceration.. On April 17 2025, she entered a plea to bail jumping relating to the Grand Larceny offense. She was released to New York State parole on June 16, 2025.

Ms. Sterngast admits to having a history of drug addiction to opioids. At Bedford Hills, she successfully completed the prison's shock incarceration program, which involved drug treatment and testing. Her drug testing revealed that she was drug free for the entire time she was at Bedford Hills. Importantly, during her time at Bedford Hils, besides becoming clean-important in and of itself- and abstaining from any drug use, she spent her time reflecting on her life's path and the path she now is determined to pursue. At forty-one her life has more meaning and purpose. Her period of abstaining from all drugs, has given her the confidence to continue on her path of rehabilitation. She understands that she needs intensive out-patient drug treatment and will participate in any out-patient program recommended by Pretrial Services. She also recognizes that she can benefit from mental health treatment.

At Bedford Hills, Ms. Sterngast was on a daily regimen of suboxone which she will continue on pretrial release. She is required under the terms of parole to attend outpatient drug treatment. Thus, besides being supervised by her pretrial officer, she will be under Parole supervision if she is granted bond. Parole also requires her to

It is evident that Ms. Sterngast will benefit greatly by pretrial release. It will allow her to better participate in her defense, to continue with her drug treatment in a meaningful way, and to complete her Master of Science degree. She has every reason to continue her path of rehabilitation, knowing that one slip could mean her return to jail. Further incarceration will not allow her to move to the next step- outpatient treatment for her addiction.

  Ms. Sterngast's family is fully committed to ensuring her compliance with all conditions, and both her parents and her brother stand ready to support and supervise her throughout the pretrial period. The bond proposal involves Ms. Sterngast's entire immediate family. If she were to violate the bond, she would cause irreparable financial harm to her parents, as her father is the sole financial support of her mother, and her only sibling, who is married with children.

### *Conclusion*

  Based on the foregoing, a bond, co-signed by Ms. Sterngast's entire family, with the additional conditions of home detention, electronic monitoring at her mother's home, with her mother as third-party custodian, is sufficient to ensure Ms. Sterngast's return to court and the safety of the community.

                Respectfully,
                /s/
                Donna Newman, counsel for Megan Sterngast
                /s/
                Lisa Scolari, counsel for Megan Sterngast

CC: AUSA Joseph Rosenberg